IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO.: 3:04CV270

| | |
|---|---|
| DIRECTV, INC., )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>)<br>WINSTON WARD, )<br>      Defendant. )<br>_____) | MEMORANDUM AND<br>RECOMMENDATION |

**THIS MATTER IS BEFORE THE COURT** on the "Plaintiff's Motion for Default Judgment Against Defendant Ward, and For Certification of Final Judgment" (Document No. 19), "Plaintiff's Memorandum of Law in Support of Its Motion ..." (Document No. 20), "Affidavit of Leslie C. O'Toole in Support of Default" (Document No. 21), and "Affidavit of Patricia Kerner in Support of Default" (Document No. 22), all of which were filed on August 1, 2005 by DIRECTV, Inc. ("DIRECTV"). The Motion has been referred to the undersigned and is ripe for disposition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

DIRECTV is a direct broadcast satellite provider. DIRECTV's satellite programming is received by DIRECTV subscribers through the use of a fixed outdoor satellite dish, which is connected by cable to an indoor satellite receiver. The indoor satellite receiver is connected by cable to a television monitor.

An individual cannot receive DIRECTV's signal without paying a subscription fee. In order to prevent the unauthorized receipt and use of its satellite programming, DIRECTV uses encryption technology to scramble the signal, which makes the signal unusable until it is unscrambled. Once

1

a DIRECTV customer pays a subscription fee, DIRECTV electronically directs an access card in the satellite receiver to unscramble the satellite signal. The customer can then receive DIRECTV's satellite programming. DIRECTV can electronically direct the access card in the satellite receiver to provide different levels of service, depending on what level of service the customer has purchased.

Despite the encryption technology used by DIRECTV, individuals have created devices and equipment ("Pirate Access Devices") to pirate DIRECTV's signal without paying a subscription fee. DIRECTV has attempted to stop the sale and distribution of these Pirate Access Devices in part by bringing lawsuits against the individuals who purchased and allegedly used and/or distributed Pirate Access Devices. This case is one of many that have been filed in this Court.

In this case, on June 4, 2002, Stanley Earl Caple, operator of "Sat-Stuff.com," voluntarily surrendered his business records. As a result of the business records obtained from Mr. Caple, DIRECTV learned that Mr. Ward purchased one Pirate Access Device. Specifically, Mr. Ward purchased an "Emulator (1-9)" from Sat-Stuff.com. On June 2, 2004, DIRECTV filed a Complaint, alleging the following causes of action against Mr. Ward: (1) violations of the Cable Communications Policy Act, pursuant to 47 U.S.C. § 605(a); (2) violations of 18 U.S.C. § 2511; (3) willful assembly or modification of devices or equipment, pursuant to 47 U.S.C. § 605(e)(4); (4) theft of telecommunication service, pursuant to N.C. Gen. Stat. § 14-113.5; (5) interception and disclosure of electronic communication, pursuant to N.C. Gen. Stat. § 15A-287; (6) unfair and deceptive trade practices; and (7) civil conversion. DIRECTV seeks injunctive relief, statutory damages or actual damages, punitive damages, and reasonable attorneys' fees and costs. On January 28, 2005, DIRECTV served the Summons and Complaint on Mr. Ward.

Mr. Ward failed to answer the Complaint or otherwise appear in this matter. As such, on

March 30, 2005, DIRECTV filed a Motion for Entry of Default. On April 26, 2005, the Clerk of Court entered default against Mr. Ward. DIRECTV now seeks to have default judgment entered against Mr. Ward. DIRECTV further asks the Court to award statutory damages of $10,000 for Mr. Ward's violation of 47 U.S.C. § 605(a) and 18 U.S.C. § 2511, as well as attorney fees and costs in the amount of $489.00. DIRECTV also asks the Court to "permanently enjoin Defendant, Defendant's employees, agents, servants, successors and assigns and any other person acting in concert with any of them, from committing or assisting in the commission of any violation of 47 U.S.C. § 605 or 18 U.S.C. § 2511 ...."

## II. DISCUSSION

### A. <u>Violation of 18 U.S.C. § 2511</u>

Section 2511 of the Wiretapping Act prohibits any person from intentionally intercepting, endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept any wire, oral, or electronic communication. 18 U.S.C. § 2511(1)(a). Section 2520, which is also part of the Wiretapping Act, provides a remedy for violations of 18 U.S.C. § 2511. Subsection (a) provides that a private civil action may be brought:

> Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person . . . which engaged in that violation such relief as may be appropriate.

18 U.S.C. § 2520(a). Subsections (b)(2) and (c)(2) provide for the award of damages:

> (b) In an action under this section, appropriate relief includes: ... (2) damages under subsection (c) and punitive damages in appropriate cases ...
> (c)(2) In any other action under this section, the court may assess as damages whichever is the greater of – (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is the greater of $100 a day for each violation or

$10,000.

18 U.S.C. §§ 2520(b)(2), (c)(2).

The language of this statute has lead various courts, including the Fourth Circuit, to conclude that an award of damages is permissive, as opposed to mandatory. See, e.g., Nalley v. Nalley, 53 F.3d 649, 652 (4th Cir. 1995) (concluding that the use of the word "may" indicates that "Congress intended to confer upon district courts the discretion to decline to award damages in applying § 2520(c)(2)"). That is to say, even if there has been a violation of Section 2511, this Court may, in its discretion, refuse to award any damages under Section 2520(c)(2).

In determining whether to award such damages

> . . . a district court should make an individualized assessment of each defendant. Factors that may be considered include whether the plaintiff suffered financial harm, the extent to which a violation occurred and unlawfully intercepted signals were disclosed, whether the defendant had a legitimate reason for his or her actions, whether the defendant profited from his or her acts, and whether an award of damages would serve a legitimate purpose.

Directv, Inc. v. Guzzi, 308 F. Supp. 2d 788, 790 (E.D. Mi. 2004) (internal citations omitted); see also Nalley, 53 F.3d at 653-54 (denying an award of damages to plaintiff pursuant to 18 U.S.C. § 2520(c)(2) after considering whether plaintiff suffered financial loss and whether defendant received a profit).

B. **Violation of 47 U.S.C. § 605(a)**

47 U.S.C. § 605(a)(4) provides in pertinent part as follows:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein

4

contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). Any person aggrieved by a violation of Section 605(a) may bring a private civil action against the violator and seek damages under Section 605(e). Under Section 605(e)(3)(B), the court "may award damages" and "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." If statutory damages are to be awarded for a violation of Section 605(a), the amount awarded for each violation shall be "not less than $1,000 or more than $10,000, as the Court considers just ...." 47 U.S.C. § 605(e)(3)(C)(i)(II).

### C. Entry of Default Judgment

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and after the clerk has entered default against such party, the opposing party is entitled to move for default judgment. See Fed. R. Civ. P. 55. Moreover, "[a]verments in a pleading to which a responsive pleading is required . . . are admitted when not denied in the responsive pleading." Fed. R. Civ. P. 8(d). It is important to note, however, that "'a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover.'" Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) (citation and quotation omitted). Because default has been entered against Mr. Ward, the Court takes as true the allegation that Mr. Ward purchased one "Emulator (1-9)" and "intentionally intercepted, endeavored to intercept, or procured other persons to intercept electronic communications from DIRECTV." Accordingly, DIRECTV has established valid claims under 18 U.S.C. § 2511 and 47 U.S.C. § 605(a) and is entitled to default judgment.

### D. Award of Statutory Damages

Because the Court has concluded that default judgment is warranted, the Court must address

the issue of damages. In exercising its discretion in the instant case, the Court concludes that damages are not appropriate. DIRECTV has not offered any evidence about the financial harm it suffered as a result of Mr. Ward's actions. Aside from potentially receiving DIRECTV's satellite television programming free of charge for a period of time, there is no indication that Mr. Ward otherwise profited from his conduct. There is no evidence that he used these devices for commercial purposes or purchased the devices for resale. There are no allegations that Mr. Ward induced others to commit similar violations. Although DIRECTV alleges that "[t]he value of the programs that Defendant was capable of viewing without authorization *may* easily reach $100,000 in a single year," there is no allegation as to how long Mr. Ward actually used the devices or the dollar amount DIRECTV would have received in subscription fees but did not obtain as a result of Mr. Ward's activity. There is no evidence of the amount of Mr. Ward's actual personal use of the devices. Therefore, the Court recommends that DIRECTV's request for statutory damages arising from Mr. Ward's violation of 18 U.S.C. § 2511 and 47 U.S.C. § 605(a) be denied.

### E. **Award of Attorneys' Fees and Costs**

While an award of statutory damages may serve the legitimate and useful purpose of deterrence, the Court finds that this purpose can be met by an award of costs and attorneys' fees. 18 U.S.C. § 2520(b)(3) permits a court to award "a reasonable attorney's fee and other litigation costs reasonably incurred." By contrast, 47 U.S.C. § 605(e)(3)(B) directs the court to award the recovery of full costs, including reasonable attorney fees.

Although the Court finds that DIRECTV is not entitled to damages for a violation of 18 U.S.C. § 2511 and 47 U.S.C. § 605(a), the Court will order Mr. Ward to pay reasonable attorney fees and costs to DIRECTV. DIRECTV submitted the affidavit of Ms. O'Toole to prove the attorney fees

and costs incurred in this matter. In that affidavit, Ms. O'Toole avers that DIRECTV has incurred legal fees in an amount of $249.00 and costs in the amount of $240.00. The undersigned will recommend that DIRECTV be awarded attorney fees in the amount of $249.00 and costs in the amount of $240.00.

### F. Abandonment of Claims

DIRECTV – in addition to its 47 U.S.C. § 605(a) and 18 U.S.C. § 2511 claims – asserted claims against Mr. Ward for: (1) willful assembly or modification of devices or equipment, pursuant to 47 U.S.C. § 605(e)(4); (2) theft of telecommunication service, pursuant to N.C. Gen. Stat. § 14-113.5; (3) interception and disclosure of electronic communication, pursuant to N.C. Gen. Stat. § 15A-287; (4) unfair and deceptive trade practices; and (5) civil conversion. DIRECTV did not seek default judgment with regard to those claims. Accordingly, the Court recommends that those claims be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.

### III. RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends that:

(i) the "Plaintiff's Motion for Default Judgment Against Defendant Ward, and For Certification of Final Judgment" (Document No. 19) be **GRANTED** and DIRECTV be awarded attorney's fees in the amount of $249.00 and costs in the amount of $240.00, but no statutory damages;

(ii) in light of DIRECTV's failure to pursue the remainder of its claims against Mr. Ward, those claims be **DISMISSED WITH PREJUDICE**; and

(iv) Mr. Ward be permanently enjoined from committing or assisting in the commission of any violation of 47 U.S.C. § 605 or committing or assisting in committing any

7

violation of 18 U.S.C. § 2511.

### III. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this memorandum must be filed within ten (10) days after service of same. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989); <u>United States v. Rice</u>, 741 F. Supp. 101, 102 (W.D. N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to <u>de novo</u> review by the district court, <u>Snyder</u>, 889 F.2d at 1365, and may preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 845-46 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Robert J. Conrad, Jr.

**Signed: September 13, 2005**

David C. Keesler
United States Magistrate Judge